# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**KEITH PATTERSON**                                        CIVIL ACTION

**VERSUS**                                                 NO.  06-3062

**JAMES M. LEBLANC, WARDEN**                               SECTION "S"(4)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an Evidentiary Hearing if necessary, and to submit Proposed Findings and Recommendations pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.  *See* 28 U.S.C. § 2254(e)(2).[1]

## I.    Factual Background

The petitioner, Keith Patterson ("Patterson"), is incarcerated in the Dixon Correctional Institution in Jackson, Louisiana.[2]  On April 28, 2000, Patterson was charged by Bill of Information in Lafourche Parish with possession of cocaine with the intent to distribute.[3]

The record reflects that, on March 2, 2000, Louisiana State Trooper Andre Bienvenu, Jr., saw a silver Dodge Stratus continually driving in the left lane of U.S. Highway 90 near Des Allemands,

---

[1]Under Title 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 4.

[3]St. Rec. Vol. 1 of 6, Bill of Information, 4/28/00.

Louisiana.[4]  The officer stopped the car.  The driver of the vehicle, Elroy McGuin, was unable to produce a driver's license and the officer determined from the computer records that his license had expired.  McGuin told the officer that he borrowed the car from the passenger's cousin.  Patterson was the passenger, and he too did not have a driver's license.  Trooper Bienvenu learned that the vehicle had been rented in Morgan City, Louisiana, by someone else.  He also learned that neither McGuin nor Patterson were listed as authorized driver's on the rental agreement.

While speaking with McGuin, the officer noticed a strong odor of air freshener coming from the vehicle.  Based on his past experience, he believed that the air freshener may have been used to cover the smell of marijuana or alcohol.  Trooper Bienvenu asked McGuin for consent to search the vehicle which was granted in writing.

Another Trooper, Bart A. Robichaux, arrived as backup during the search.  Robichaux testified that McGuin and Patterson were very interested in how and where Bienvenu searched the car.  Under the hood of the car, Trooper Bienvenu located 507 grams of cocaine in eight bags, which were wrapped in a towel.  The cocaine was estimated to have a street value of $50,700.  McGuin and Patterson were placed in handcuffs and read their rights.

At the police station, McGuin and Patterson were seated next to each other near the front desk.  Patterson eventually gained Trooper Bienvenu's attention and told him that McGuin did not know anything about it and that he would "take the rap."

McGuin testified at trial that he and Patterson drove some of Patterson's relatives to New Orleans that day in a car he had borrowed from a friend.  They were on the way back when they

---

[4]The facts of the case were taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal on direct appeal.  St. Rec. Vol. 6 of 6, 1st Cir. Opinion, 2002-KA-0758, 12/20/02; *State v. Patterson*, 837 So.2d 762 (La. App. 1st Cir. 2002) (Table).

were stopped.  He claimed that he maintained control of the keys the entire time.  He further testified that there was no possible way that Patterson could have placed the drugs under the hood of the car.

On September 19, 2000, Patterson's counsel filed a Motion to Suppress seeking to exclude the cocaine seized by the officer and Patterson's statements allegedly made at the police station.[5] At a hearing held on December 14, 2000, the Trial Court held that there was no legal basis for the stop and excluded both evidence and the statement.[6]

At a hearing held on June 14, 2000, the Trial Court indicated that the State had sought successful review of the denial of the Motion to Suppress in the Louisiana First Circuit Court of Appeal and the prior ruling was reversed.[7]  The Court heard additional argument and thereafter denied the motion.[8]

Patterson was tried by a jury on October 23, 24, and 25, 2001.[9]  He was found guilty as charged.[10]  The Court later denied Patterson's Motion for Post Verdict Judgment of Acquittal and Motion for New Trial on December 14, 2001.[11]  On December 21, 2001, the court sentenced

---

[5]St. Rec. Vol. 1 of 6, Motion to Suppress, 9/19/00.

[6]Id., Transcript of Motion to Suppress, 12/14/00; St. Rec. Vol. 2 of 5, Transcript of Motion to Suppress (continued), 12/14/00.

[7]St. Rec. Vol. 3 of 6, Transcript of Motion to Suppress, p. 2-3, 6/14/00.

[8]Id.; See also, St Rec. Vol. 2 of 6, Memorandum in Support of Motion to Suppress, 6/8/01; Memorandum in Opposition to Defendant's Motion to Suppress Evidence, 6/11/01.

[9]St. Rec. Vol. 5 of 6, Trial Minutes, 10/23/01; Trial Minutes, 10/24/01; Trial Minutes, 10/25/01; St. Rec. Vol. 3 of 6, Trial Transcript, 10/23-25/01; St. Rec. Vol. 4 of 6, Trial Transcript (continued), 10/23-25/01; St. Rec. Vol. 5 of 6, Trial Transcript (continued), 10/23-25/01.

[10]St. Rec. Vol. 5 of 6, Trial Minutes, 10/25/01; St. Rec. Vol. 2 of 6, Verdict of the Jury, 10/25/01.

[11]St. Rec. Vol. 2 of 6, Motion for Post Verdict Judgment of Acquittal, 11/28/01; Motion for New Trial, 11/28/01; Hearing Transcript, 12/6/01.  The record does not contain a minute entry or transcript of the December 14, 2001, hearing.  However, it is referenced in Patterson's appeal brief and in the State's appeal brief.  St. Rec. Vol. 5 of 6, Appeal Brief, p. 4, 7/26/02; St. Rec. Vol. 6 of 6, State's Appeal Brief, pp. 1-2, 8/29/02.

Patterson to serve 20 years in prison, with the first five years to be served without benefit of parole.[12] The court also denied Patterson's motion to reconsider the sentence based on excessiveness.[13]

On appeal to the Louisiana First Circuit Court of Appeal, Patterson's counsel raised six grounds for relief:[14] (1) the conviction was contrary to the law and evidence; (2) the State's use of peremptory challenges violated *Batson v. Kentucky*, 476 U.S. 79 (1986); (3) the Trial Court erred in denying the motion for mistrial based on improper comments during the prosecutor's opening remarks; (4) the Trial Court erred in responding to jury questions during deliberations; (5) the Trial Court erred in denying the motions for new trial and for post verdict judgment of acquittal based on insufficiency of the evidence; and (6) the sentence was excessive.

On December 20, 2002, the Louisiana First Circuit affirmed the conviction and sentence finding no merit to Patterson's claims.[15]   Patterson did not seek further timely review in the Louisiana Supreme Court.  Therefore, his conviction became final on January 20, 2003, or the next non-holiday business day,[16] January 21, 2003, which was 30 days after issuance of the appellate court's opinion and no further appellate review was available.[17]  *Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003) (under federal habeas law, a conviction is final when the state defendant does not timely proceed to the next available step in the appeal process).

---

[12]St. Rec. Vol. 2 of 6, Felony Sentencing, 12/21/01; St. Rec. Vol. 3 of 6, Sentencing Transcript, 12/21/01.

[13]St. Rec. Vol. 2 of 6, Motion to Reconsider Sentence, 12/21/01; Trial Court Order, 12/21/01.

[14]St. Rec. Vol. 5 of 6, Appeal Brief, 7/26/02.

[15]St. Rec. Vol. 6 of 6, 1st Cir. Opinion, 2002-KA-0758, 12/20/02.

[16]January 20, 2001, was a Monday and Dr. Martin Luther King Holiday.

[17]La. S.Ct. R. X§5(a) provides that an application seeking review of the judgment of the court of appeal shall be made within 30 days of the issuance of the judgment. *See also* La. Code Crim. Proc. art. 922(A).

## II.    <u>Procedural Background</u>

One year and seven days later, on January 28, 2004, Patterson mailed a writ application to the Louisiana Supreme Court, which was filed in that court on April 15, 2004, seeking review of his direct appeal.[18]  The Louisiana Supreme Court denied the application without reasons on February 25, 2005.[19]

Over nine months later, on December 9, 2005, Patterson signed a Uniform Application for Post Conviction Relief to the Trial Court, which was filed on December 27, 2005, and which raised six grounds for relief:[20] (1) the Fourth Amendment and Louisiana laws on search and seizure were violated; (2) the conviction was obtained on evidence that was illegally seized; (3) the indictment was rendered by a grand jury which was the subject of a discriminatory selection process and the petit jury selection was in violation of *Batson*; (4) the state trial judge demonstrated judicial prejudice against the defendant and his counsel through his remarks and rulings; (5) the evidence was insufficient to support the verdict; and (6) the sentence was excessive.

The Trial Court denied the application on February 10, 2006, finding that the claims were procedurally barred from further review under La. Code Crim. P. art. 930.4(A) because the claims had been fully addressed on appeal.[21]  Patterson sought no review of the ruling.

## III.    <u>Federal Petition</u>

---

[18]The record does not contain a copy of this writ application.  The postmark and filing date have been confirmed with the record of the Clerk of Court for the Louisiana Supreme Court.  *See also*, St. Rec. Vol. 6 of 6, La. S. Ct. Letter, 2004-KH-952, 4/15/04 (showing postmark of 1/28/04).

[19]*State ex rel. Patterson v. State*, 894 So.2d 1137 (La. 2005); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2004-KH-0952, 2/25/05.

[20]St. Rec. Vol. 6 of 6, Uniform Application for Post Conviction Relief, 12/27/05 (signed 12/9/05).

[21]St. Rec. Vol. 6 of 6, Reasons for Judgment, 2/10/06; Judgment, 2/10/06.

On July 19, 2006, Patterson filed a Petition for Federal Habeas Corpus Relief in which he alleged the following two grounds for relief:[22] (1) The evidence at trial was insufficient to prove intent to possess or to distribute the cocaine; and (2) the stop and search of the vehicle were both unconstitutional.

The State filed an answer to Patterson's petition and an opposition memorandum alleging that the petition was not timely filed.[23]

## IV.   Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[24] applies to Patterson's petition, which is deemed filed in this court under the federal mailbox rule on June 1, 2006.[25]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default"

---

[22]Rec. Doc. No. 4.

[23]Rec. Doc. No. 9.

[24]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA was signed into law on that date and it does not specify an effective date for its non-capital amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[25]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Patterson's federal habeas petition on July 19, 2006, when the filing fee was paid. Patterson dated his signature on the petition on June 1, 2006. This is the earliest date on which he could have been submitted the pleadings to prison officials for mailing. The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin*, 310 F.3d at 843 (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

In this case, the State has raised the defense that Patterson's federal petition was not timely filed. The Court will address the State's limitations defense.

## V.       Statute of Limitations

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[26] *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001). As set forth above, Patterson's conviction is presumed final on January 21, 2003. Under the plain language of § 2244, he had until January 21, 2004, to file a timely federal application for habeas corpus relief and he failed to do so. Thus, literal application of the statute would bar Patterson's § 2254 petition as of that date unless he is entitled to tolling as provided for by the AEDPA.

Section 2244(d)(2) provides that the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2). For a State post

---

[26]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

A.       the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B.       the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C.       the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or

D.       the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d).

conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-414 (2005); *Williams v. Cain*, 217 F.3d 303, 306-07 n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir.), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999). The United States Fifth Circuit has clarified its prior opinions to the contrary and resolved that timeliness in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams v. Cain*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2nd Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 2001 WL 995164, slip op. at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same

substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).

The federal courts have also determined that requests for transcripts and copies of documents from the record, like those occasionally filed by petitioner, are not "applications for post-conviction or other collateral review" and therefore do not affect the timeliness calculations. *Osborne v. Boone*, 176 F.3d 489, 1999 WL 203523 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion for transcripts is not "other collateral review" for tolling purposes); *see also Brown v. Cain*, 112 F. Supp.2d 585, 587 (E.D. La. 2000), *aff'd*, 239 F.3d 365 (5th Cir. 2000); *Gerrets v. Futrell*, 2002 WL 63541 (E.D. La. Jan. 16, 2002); *Jones v. Johnson*, 2001 WL 1006062 at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather transcripts); *Grayson v. Grayson*, 185 F. Supp.2d 747, 751-52 (E.D. Mich. 2002) (delay in receipt of transcript, not required to file an application, does not warrant equitable tolling).

In this case, Patterson's AEDPA filing period began to run on January 22, 2003, the day after his conviction is deemed final.  The filing period ran uninterrupted for 365 days, until January 21, 2004, when it expired.  Patterson had no properly filed state application for post conviction relief or other collateral review pending during that time period.  In addition, as noted above his efforts to obtain copies of documents and pleadings do not constitute post conviction or other collateral review and they did not toll the time period.  Nor did Patterson's subsequent efforts to seek post conviction relief in the state court affect this calculation.  *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000).

Patterson suggests in his federal petition that he was unaware that the Louisiana First Circuit had affirmed his conviction on direct appeal and this accounted for his delayed filings in state

court.[27]  He suggests that he wrote to the appellate court for a status and was told he could try to pursue out-of-time review from the Louisiana Supreme Court.  Patterson provides no proof of this exchange with the state appellate court nor does he provide the dates of his efforts to learn the information.

The record, on the other hand, clearly reflects that Patterson knew that he needed to pursue relief in the Louisiana Supreme Court on or before September 5, 2003.  In a motion to the trial court to obtain copies, Patterson wrote, "The petitioner contends that he needs a copy of these Documents to prepare his La. Supreme Court Appeal."[28]  He waited another six months to send his pleadings to the Louisiana Supreme Court in spite of the knowledge that "he only had a certain time limitation in which to file his appeal" to the Louisiana Supreme Court.[29]

The Court does not find Patterson's suggestion that he did not know to pursue further relief to be credible.  He allowed 227 days to lapse between the finality of his conviction on January 21, 2003, and his attempt to obtain copies on September 5, 2003, in which he indicated his knowledge that he had to pursue relief in the Louisiana Supreme Court.  He allowed another 144 days to lapse between the filing of that request for documents and the submission of his writ application to the Louisiana Supreme Court.  Patterson has not demonstrated that he acted with due diligence in pursuing his rights so as to warrant equitable tolling of any portion of the AEDPA filing period.[30]

---

[27]Rec. Doc. No. 4-2, p. 3-4.

[28]St. Rec. Vol. 6 of 6, Motion to Compel, 9/10/03 (signed 9/5/03).

[29]*Id.*

[30]The Court also finds that petitioner has not alleged and the record does not reflect the type of extraordinary circumstances which would warrant equitable tolling.

The Court also notes that even if some portion or all of the 227 day delay between January 21, 2003 and September 5, 2003, is forgiven through equity, Patterson's federal petition is still untimely.  The writ application to the Louisiana Supreme, which was submitted one week after the AEDPA filing deadline expired, would not have afforded him any statutory tolling.  Under La. S.Ct. R. X§5, an application seeking review of the judgment of the court of appeal shall be filed or postmarked within 30 days of the issuance of the judgment.  *See   Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006); *Marshall v. Cain*, 155 Fed. Appx. 769, 2005 WL 3115095 (5th Cir. Nov. 22, 2005) (postmark date controls under La. S. Ct. Rule X§5); *see also* La. Code Crim. Proc. art. 922(A).  Patterson's Louisiana Supreme Court writ was submitted and postmarked on January 28, 2004, which was well after the expiration of the 30 day time period and 144 days after he acknowledged that he had to file in that court.  In sum, the application was not timely under La. S. Ct. Rule X§5, and therefore was not properly filed for tolling purposes.[31]

Furthermore, the fact that the Louisiana Supreme Court may have considered the out-of-time application would not revive Patterson's already final conviction or otherwise restart the calculation of the AEDPA filing period.  *McGee v. Cain*, 104 Fed. Appx. 989, 991-992 (5th Cir. July 28, 2004) (applying *Salinas v. Dretke*, 354 F.3d 425 (5th Cir.), *cert. denied*, 541 U.S. 1032 (2004)).  A state conviction is final for AEDPA limitations purposes at the conclusion of the original period for seeking direct review and not at conclusion of an out-of-time appeal granted on application for post conviction relief.  *Id*.

Finally, the record reflects that Patterson allowed another 286 days to run after the Louisiana Supreme Court ruled before submitting his Uniform Application for Post Conviction Relief to the

---

[31]*See*, Footnotes 17 and 18, *supra*.

Trial Court on December 9, 2005.  This lapse in time is further demonstration of Patterson's lack of diligence in pursuing his rights in a timely manner.

Patterson's federal petition is deemed filed on June 1, 2006, which was two and one-half years after the AEDPA filing period expired.  His petition must be dismissed as untimely.

**VI.   Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that Keith Patterson's petition for issuance of a Writ of Habeas Corpus filed pursuant to Title 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this _____29th_____ day of _____October_____, 2007.

_____
**KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE**